U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2024 AUG -9 AM 9:48

CLERK
BY ________
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

TRICIA BILODEAU, Individually, and as Administrator of THE ESTATE OF MATTHEW BILODEAU,

Plaintiffs,

v.

USINAGE BERTHOLD, INC. and BERT TRANSMISSION, a division of USINAGE BERTHOLD, INC.,

Defendants.

Case No. 5:22-cv-101

**ORDER ON MOTION FOR DEFAULT JUDGMENT**
**(Doc. 41)**

This wrongful death case arises out of an accident on April 5, 2021 when Matthew Bilodeau was killed after an air jack collapsed while he was underneath his dirt track race car at his home garage. Defendant Usinage Berthold, Inc. is a Canadian company that manufactured the equipment sold as the "Bert Air Jack." Defendant Bert Transmission is a division of Usinage Berthold, Inc.

## Background

Plaintiffs commenced this lawsuit on May 9, 2022. The complaint alleges negligence in the design and labeling of the Bert Air Jack. It focuses on the absence of instructions concerning the placement of pins that lock the legs supporting the jacking mechanism. Plaintiffs allege: "The Bert Air Jacks bore no arrows, markings, instructions, or guides anywhere on the product, to indicate how to stabilize the jack, where to place the pins; nor were there any warnings about the extreme danger that could result from improper placement of pins." (Doc. 1 ¶ 13.) According to the complaint, the air jack arrived without instructions. There were two sets of

holes in the body of the track to accept the pins to lock in the legs. "The Bert Air Jack collapsed and crushed Mr. Bilodeau, because the pins that secure the legs on the jack were inserted in the wrong set of slots." (*Id.* ¶ 14.)

Defendants filed an answer on June 13, 2022. (Doc. 2.) The answer denies certain paragraphs. It contains no denial of the jurisdictional allegations in ¶¶ 3–5 of the complaint. The answer raises three "affirmative defenses." The first alleges that "[a]bsent an unauthorized defeating of the safety catches, there is no failure, including a total and unanticipated loss of air pressure which can cause the jack and the vehicle it is supporting to descend more than the four inches described above." (Doc. 2 ¶ 5.) The second is that allowing the jack to descend requires the operator to use both hands release the compressed air. The third is that the use of the leg-securing pins is open and obvious to an experienced race team member. (*Id.* ¶¶ 6–11.)

Plaintiffs filed affidavits of service on June 17, 2022. (Docs. 5, 6.) Defendants have not raised any objection to issues of service.

On July 26, 2022, the parties filed a stipulated discovery schedule signed by counsel for both sides. (Doc. 9.) The court signed the proposed order. (Doc. 10.) The parties filed an amended order, which the court also granted. (Doc. 14.)

The amended discovery schedule marked the end of forward progress in preparing the case for trial. On September 19, 2023, Plaintiffs filed a motion to compel and motion for sanctions, stating that Defendants had not filed initial disclosures or answered Plaintiffs' discovery. Phone calls and emails from Plaintiffs' counsel went largely unanswered. (Doc. 18 ¶¶ 8–17.)

On December 13, 2023, the court held a hearing on the motion to compel. The court granted the motion and ordered responses within 10 days. (Doc. 26.) The court deferred ruling

on the motion for sanctions. Although the notice of hearing stated that the hearing would be conducted in the Rutland, Vermont courtroom, Defendant's counsel drove past Rutland and appeared at the Burlington, Vermont courthouse. The court permitted him to appear by video.

On December 19, 2023, the court entered an order noting that defense attorney McGuire was not admitted to practice in the District of Vermont. He had not obtained local counsel or filed a motion for admission pro hac vice. The court ordered him to correct these omissions within 15 days. (Doc. 27.)

On December 28, 2023, Plaintiffs filed an "Accounting of Costs in Support of Plaintiffs' Motion for Sanctions." (Doc. 28.) The accounting stated that Defendants had not produced any documents or responded to the court's order compelling discovery responses. (*Id.* at 1-2.)

On March 6, 2024, the court held a hearing on the motion for sanctions. Bert Robidoux, the principal of the defendant corporations, appeared with counsel at the court's request. The court ordered that Defendants obtain an appearance from an attorney admitted to practice in the District of Vermont not later than March 13, 2024 and answer the outstanding discovery by the same date. (Doc. 32.) The court set deadlines for the exchanges of expert witness reports. The court ordered that, if these deadlines were not met, the court would issue an order to show cause and Plaintiffs could renew their motion for sanctions, including the potential sanction of default on liability issues. (*Id.*)

The March 13, 2024 deadline passed with no appearance by an attorney. On April 17, 2024, the court entered an order to show cause and set a hearing for May 29, 2024. The order stated:

> [T]he court will hear from the parties about whether each side has complied with the court's order. The potential sanction for a failure to comply . . . includes a default judgment against the defendant[s]. The court expects that the plaintiff[s]

> will be prepared with a sufficiently detailed affidavit in support of a potential damages award in the event that the court imposes the sanction of default.

(Doc. 33.) At Plaintiffs' request, the court continued the hearing to July 17, 2024.

Plaintiffs filed a motion for default judgment on July 10, 2024. (Doc. 41.)

On July 17, 2024, the court held a hearing on the motion to show cause and the motion for default judgment. Defense counsel McGuire requested a few more days to obtain counsel and respond to discovery. The court rejected the request. Plaintiffs called Tricia Bilodeau (widow of the decedent) as a witness. The court permitted Mr. McGuire to cross-examine. Plaintiffs submitted expert witness reports on liability and on damages. The court left the record open until July 24, 2024, for any further submissions by either side.

## Analysis

### I. Ruling on Motion for Default Judgment

Rule 37(b)(2)(A)(vi) of the Federal Rules of Civil Procedure authorizes the court to "render[] a default judgment against the disobedient party." The failure to comply with discovery must be willful and accompanied by warnings of the consequences of non-compliance. *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 451 (2d Cir. 2013).

The court finds that the non-compliance with discovery is willful. Defendants have failed to comply with any discovery requirements or the court's deadlines despite repeated hearings and orders. Defendants have provided no discovery at all, including initial disclosures. Compliance has been the subject of two court hearings at of which the court ordered compliance within 10 days. These did not result in any compliance.

The Defendants have received fair warning of the potential consequence of default. The order dated March 8, 2024 warns that, if discovery is not provided, Plaintiffs "may renew its motion for sanctions, including the potential sanction of default on liability issues." (Doc. 32

at 2.) The court renewed its warning about the potential for a default in the order to show cause dated April 17, 2024. The court stated that "[t]he potential sanction for a failure to comply with the court's order [concerning compliance with discovery] includes a default judgment against the defendant[s]." (Doc. 33 at 1.) Defendants also received Plaintiffs' motion for default judgment on July 10, 2024, a week before the hearing, and the court's second revised notice concerning the hearing referenced a hearing on the motion for default. (Docs. 41, 43.) Ms. Bilodeau's damages affidavit was filed in advance of the hearing. (Doc. 44.)

As stated on the record at the July 17, 2024 hearing, the court grants the motion for default judgment. Despite two hearings and two orders from the court, Defendants have failed to respond to discovery. They have not provided initial disclosures. Nor have they responded to interrogatories and requests to produce. Their non-compliance has been evident to the court since December 2023 when Defendants failed to comply with the court's first order to respond to discovery. Seven months later nothing has changed.

Defendants have also ignored the court's requirement that they obtain counsel admitted to practice in the District of Vermont. This is an important requirement because it affords the court some measure of accountability from the lawyers who appear in court. Out-of-state lawyers are welcome and frequently admitted, but, if there is a problem with violations of court orders, it is the local attorney who is subject to the court's disciplinary procedures. *See* Local Rule 83.1(b) ("Admission of Attorneys *Pro Hac Vice*").

Either the failure to comply with discovery or the absence of an attorney admitted to practice would be sufficient grounds for entry of default. Defendants' refusal to comply with both requirements after repeated discussion and hearings is strong evidence of their willful violation of the court's orders.

Rule 55(b)(2) of the Federal Rules of Civil Procedure requires seven days' notice to the party against whom default is sought. The order to show cause issued on April 17, 2024. The Plaintiffs' motion for default was filed on July 10, 2024. Both filings gave sufficient notice. At the hearing, the court permitted attorney McGuire to participate and allowed additional time for any supplemental filings. The court is satisfied that the default hearing came as no surprise to the Defendants and that they had an opportunity to participate.

Prior to the hearing, Plaintiffs submitted a detailed and lengthy expert witness report describing the expert's evaluation of the air jack and explaining the reasons for his conclusion that the design of the air jack was flawed. (Doc. 44-3.)

The court will enter a default judgment, including a damages award. The amount of the award is based on the evidence submitted by Plaintiffs and the testimony of Ms. Bilodeau.

## II. Damage Award

Damages in this case are governed by the Vermont wrongfuldeath and survival provisions. *See* 14 V.S.A. §§ 1451–1453, 1492. Damages available for wrongful death include "such damages as are just, with reference to the pecuniary injuries resulting from the death." *Id.* § 1492(b). The Vermont Supreme Court has defined "pecuniary injuries" broadly. In addition to economic loss, compensable damages include recovery for the loss of companionship of a surviving spouse and the loss of love, guidance, and support for surviving children, both minor and adult. *Lazelle v. Town of Newfane*, 70 Vt. 440, 41 A. 551 (1898). These damages include compensation for "lost intellectual, moral and physical training, or the loss of care, nurture and protection." *Mobbs v. Cent. Vt. Ry.*, 150 Vt. 311, 316, 553 A.2d 1092, 1095 (1988). With the exception of a 1976 amendment to § 1492 authorizing an award for "the loss of love and companionship of the child and for destruction of the parent-child relationship," Vermont law

does not authorize an award for grief suffered by the next of kin. *Russo v. Brattleboro Retreat*, No. 15-cv-55, 2017 WL 3037556 at *2 (D. Vt. June 28, 2017).

In addition to the pecuniary damage award authorized by the wrongful death statute, a personal injury claim for pain and suffering incurred prior to death survives and may be prosecuted by the decedent's estate. *See Whitchurch v. Perry*, 137 Vt. 464, 468, 408 A.2d 627, 630 (1979) (noting that 14 V.S.A. § 1453 "authorizes the executor or administrator of an estate to prosecute the cause of action the decedent had, or would have had if death had not ensued"). In *Dubaniewicz v. Houman*, 2006 VT 99, 180 Vt. 367, 910 A.2d 897, the Vermont Supreme Court upheld the denial of pain and suffering damages in the absence of proof that the decedent suffered pain before his death.

The court awards damages as follows:

**A. Economic Loss**

The court will enter a default judgment in the amount of $982,743 in compensation for economic loss resulting from Mr. Bilodeau's death. These damages are described in detail in the report submitted by the economist Robert Bancroft, Ph.D. dated July 12, 2024. The categories of loss include lost income and lost household services. These are reduced by Mr. Bilodeau's estimated personal expenditures over his projected lifetime. The projection over Mr. Bilodeau's life expectancy of 78 years includes 20 years of retirement when Mr. Bilodeau's personal expenditures equaled or exceeded his income. The economic assumptions and projections are reasonable and reflect a conservative approach to the economic loss issues.

**B. Loss of Companionship to Surviving Spouse**

As Ms. Bilodeau's testimony and affidavit make clear, her relationship with her husband was close and loving. The scope of her loss of companionship was palpable to all who heard her

testimony. At the time of Mr. Bilodeau's death, both spouses were relatively young. Their marriage and family life together was reasonably projected to last for many years. The court will enter a damage award in the amount of $5,000,000 in compensation for Ms. Bilodeau's loss of companionship.

**C. Loss of Love, Guidance, and Support for Surviving Children**

Mr. Bilodeau left three children: two minor children by his marriage with Ms. Bilodeau and an adult stepdaughter whom he raised and supported during his years with her mother. The minor children are P. (7) and K. (4). Mr. Bilodeau's stepdaughter is Jadynn (21).

The loss to all three children is very great. Ms. Bilodeau testified to the close family relationship and Mr. Bilodeau's engagement in the lives of his children. All three children have suffered greatly due to the loss of their father.

The court awards $3,000,000 each for the loss of love, guidance, and support for the two minor children.

The court lacks authority to enter an award in compensation of Jadynn's loss. Section 1492 of Title 14 limits the award of damages to "next of kin." And "'next of kin' in the wrongful death statute carries the same meaning as it does in the laws of descent." *Quesnel v. Town of Middlebury*, 167 Vt. 252, 257, 706 A.2d 436, 439 (1997). Section 314 of Title 14 prescribes the order of inheritance in the event of intestacy. In the case of a surviving spouse and children, 14 V.S.A. § 311 provides that a "surviving spouse shall receive the entire intestate estate . . . if all of the decedent's surviving descendants are also descendants of the surviving spouse." Although the wrongful death statute authorizes recovery of damages for the surviving children's loss, it contains no provision expanding the definition of "next of kin" beyond the surviving spouse and children descended from the decedent.

The Vermont Supreme Court has not ruled on whether the wrongful death statute allows for compensation of unadopted stepchildren. The issue has arisen in other states. "The state courts have generally held that a stepchild is not a 'child' within the meaning of wrongful death statutes designating the beneficiaries of such an action." James E. Rooks, Jr., *Recovery for Wrongful Death* § 5:7 (2023). It is unlikely that, if presented with the issue, the Vermont Supreme Court will insert stepchildren into the order of intestate succession or in some other way expand the definition of next of kin to include stepchildren for purposes of the wrongfuldeath statute. The court will not award damages for Jadynn's loss of her stepfather's companionship.

**D. Survival Action**

There is very little evidence that Mr. Bilodeau experienced pain and suffering between the collapse of the air jack and his death. The evidence available is that he lapsed into unconsciousness moments after the car fell on him. The notes from the emergency response service (Doc. 46-2) state that Mr. Bilodeau gasped for air for a few seconds and then was completely unresponsive. The medical records show no return to consciousness during transportation. He was declared to be deceased upon his arrival at Porter Hospital. The court awards $100,000 for the short period of conscious pain and suffering.

**Conclusion**

The court will enter a default judgment in the total amount of $12,082,743.

Dated at Burlington, in the District of Vermont, this 9th day of August, 2024.

Geoffrey W. Crawford, Judge
United States District Court